SAMUEL, Judge.
This appeal involves litigation between officers of two labor unions seeking the right to control and operate the Union Hall in Chalmette, Louisiana. The property was purchased in 1963 by Aluminum Workers Local 225 Building Corporation, a nonprofit corporation whose membership originally consisted of members of Aluminum Workers Local 225, an affiliate of the AFL-CIO (hereinafter usually referred to as Local 225), who were employed by Kaiser Aluminum and Chemical Corporation in Chalmette. At the time of the purchase, and through July 19, 1968, that union was certified as the exclusive collective bargaining agent for Kaiser employees. However, it was displaced by Local 13000 of District 50 of the United Mine Workers (hereinafter usually referred to as Local 13000) when the National Labor Relations Board certified the result of a March, 1968 election by which the Kaiser employees voted in the new union. Kaiser management received the certification on July 19, 1968.
Although the labor bargaining agent changed, officers of Local 225 retained control of the Union Hall. Under the charter of Aluminum Workers Local 225 Building Corporation (hereinafter usually referred to as 225 Building Corporation), incorporated for the specific purpose of acquiring the property, officers elected by that union also served as officers and directors of the building corporation and in this capacity they managed the Union Hall. After Local 13000 became certified its leadership attempted to wrest control of the Union Hall from the AFL-CIO group by amending the charter of the 225 Building Corporation. Pursuant to the amendments, the corporate name was changed to Kaiser Union Building, Inc. (hereinafter usually referred to as Union Building) an election was held displacing the AFL-CIO group, and control was vested in new officers active in the United Mine Workers group. When the new officers demanded the assets of the 225 Building Corporation be turned over to them, those voted out of office refused, asserting the amendments to the charter through which the former claimed control were invalid because they were adopted illegally. This litgation ensued.
In one suit (#3995 of our docket), Union Building questioned the authority of officers of the 225 Building Corporation to *427 control the assets of that corporation after they had been removed from office. In a second suit (#3996 of our docket), the 225 Building Corporation and two directors sought a writ of quo warranto directing the new officers to show they had been validly elected to succeed plaintiffs. The cases were consolidated for trial in the district court and for argument here.
The pleadings reflect both factions requested writs of mandamus and injunction in either main or reconventional demands or both; but the litigants agreed the trial would be limited to the reciprocally sought writs of quo warranto, each directed to the other, as this would ultimately resolve the question at issue.
Shortly after a charter was issued to the 225 Building Corporation, through its first officers, it purchased the Union Hall on March 15, 1963. Article VI of the charter provided the membership of the corporation would consist of every member in good standing of Local 225, the then certified collective bargaining agent for Kaiser employees. The record reflects that as a condition of employment with Kaiser each worker is required to join the union recognized as the collective bargaining agent in that plant once he has been on the payroll for more than 30 days. Thus, when Local 13000 became certified Kaiser employees were required to join this union. After certification, the officers of Local 13000, headed by Lester Tanguis, attempted to gain control of the Union Hall. Tanguis, at this time, was also vice president of Local 225 and of 225 Building Corporation.
To accomplish this purpose, Tanguis and nine other members of the 225 Building Corporation presented a petition to Prentis Farley, president of that corporation, requesting him to call a meeting on August 9, 1968 “ * * * for the purpose of introducing an amendment of the Articles of Incorporation of the Aluminum Workers Local 225 Building Corporation which would enable the Union employees at Kaiser to assume ownership and control of the Union Building.” Farley refused. Thereafter, Tanguis called the meeting. He requested the management at Kaiser to post a notice on the plant bulletin board giving the time, place and purpose for the meeting. The record establishes it was the custom to notify union members of all meetings, i. e., local union, international union, or corporate by posting notices on the plant bulletin board. The notice was addressed to “All Members of Aluminum Workers Local 225”. After it had been displayed for 36 hours, it was removed by Kaiser officials at the request of James Burroughs, a representative of Aluminum Workers International Union.
Adolph Schroeder, Kaiser’s superintendent of industrial relations, explained he was required to remove the notice because of a rule stating only bulletins of the recognized bargaining agent may be posted on the board and his department had mistakenly posted the notice of the bargaining agent that had been removed some two weeks previously. After its removal, Tanguis and his Local 13000 group distributed handbills at the entrance of the plant during four shifts in which the time, place and purpose of the meeting was given.
When approximately 300 employees appeared at the Union Hall for the meeting of August 9, they were refused admission and Tanguis, as vice president of 225 Building Corporation, conducted it on the front steps of the building. The proposed amendments were read to those present and were designed: (1) to change the name of the corporation from Aluminum Workers Local 225 Building Corporation to Kaiser Union Building, Inc.; (2) to vest membership.in the corporation to every union employee at Kaiser rather than to limit it to members in good standing of Local 225; (3) to change requirements for membership on the Board of Directors of the Building Corporation; (4) to redefine the terms “quorum”, “meetings” and “voting”; and (5) to change the method of amending the charter of the 225 Building Corporation.
*428 At this meeting it was moved that another meeting be held on August 15, 1968 to vote on the proposed amendments and Tanguis was authorized to take all steps necessary to implement the meeting. The following day, Tanguis presented five petitions to President Farley, of the 225 Building Corporation, signed by 324 members of the corporation, asking him to call a meeting on August 15, 1968. Farley again refused. Kaiser officials were asked to post a notice of the meeting on the plant bulletin board, but because it was addressed to “All Members of Aluminum Workers Local 225”, it could not be posted. Therefore Tanguis and his group gave notice of the August 15 meeting by distributing handbills at the entrance to the plant during four shifts.
Under Tanguis’ direction, an election was held on August 15 and 16 in which 925 votes were cast. Of these, 895 were for, and 30 were against, adopting the amendments to the charter which had been proposed at the August 9 meeting. It is significant to note that when the election was held the total membership in good standing in the union was 2,084 members.
Pursuant to the charter as amended, the Tanguis or Local 13000 faction held a meeting on August 30 to nominate a new Board of Directors who were elected at another meeting on September 5. The new Board of what they termed the Kaiser Union Building, Inc., the alleged successor to the 225 Building Corporation, included Tanguis, Claude Busby, Jack Robinson, Earl Gonzales and Sam Broyard.
On September 24, 1968, Lester Tanguis and his attorneys, delivered to Robert April, secretary-treasurer of the 225 Building Corporation, 58 documents, all entitled “Ratification of Member Actions”. These were signed by 1635 workers at Kaiser some time between September 13 through 17. Of the signatories, it appears that 1543 were in good standing in Local 225 during August, 1968. All 58 documents were identical; however, they appeared on separate sheets in order to permit many Local 13000 supporters to assist in obtaining signatures. It is apparent from the record that many enlisted to obtain the signatures did not understand the nature of the amendments the document purported to ratify nor were they able to explain the effect of the amendments to the workers they approached.
Based on the foregoing evidence, the trial court concluded the amendments to the charter of the 225 Building Corporation were invalid and those seeking to gain control of the assets thereof, i. e., the Union Hall, by virtue of an election held pursuant to the amendments were without authority to do so. Accordingly, judgment was rendered: (1) recognizing Prentis Farley and his board as the duly elected officers of Aluminum Workers Local 225 Building Corporation entitled to control the Union Hall; (2) ordering Lester Tanguis, Jack Robinson, Earl Gonzales, Sam Broyard and Claude Busby to desist from holding themselves out as directors and officers of Kaiser Union Building, Inc. and to cease and desist their attempts to control the assets of Aluminum Workers Local 225. Building Corporation.
Kaiser Union Building, Inc. and its officers have appealed. They argue to us six specifications of error which may be summarized as follows: (1) the trial court erred in holding the amendments to the 225 Building Corporation charter were not legally adopted; and (2) if any requirements of the charter and bylaws were not complied with in effecting the amendments, they were remedied by the ratification by more than 75% of the union members.
In attacking the procedure used to amend the 225 Building Corporation charter, ap-pellees argue the first meeting of August 9, where the proposed amendments were read, was called without proper authority and with insufficient notice. In view of the concusión we have reached, we will pretermit a discussion of these contentions and assume, for the sake of argument, the meeting was proper. Pursuant to a motion passed and seconded, Tanguis was *429 authorized to take any necessary steps to implement an election to be held on August 15 wherein members of the 225 Building Corporation would be permitted to vote on the proposed amendments.
Notice of the voting meeting was given by distributing handbills to employees of Kaiser throughout four shifts beginning August 10. It will be recalled that Kaiser management could not post notices of Local 225 on the plant bulletin board once Local 13000 became the certified collective bargaining agent for Kaiser employees.
The manner in which members are to be notified of meetings is set forth in Article IV, Section 5 of the 225 Building Corporation bylaws. In pertinent part, that section reads:
“Notice of the time and place of the annual meeting of members shall be given by mailing written or printed notices of the same prior to the meeting and notice of the time and place of special meetings shall be given by written or printed notice of the same at least five (5) days and not more than fifteen (15) days prior to the meeting, with postage prepaid, to each mamber of record of the corporation entitled to vote at such meeting, and addressed to the member's last known post office address or to the address appearing on the corporate books of the corporation. * * * any notice which complies with said union constitution and/or rules and regulations or practices for the holding of any union meeting may be given in lieu of the notice provided herein for the calling of special meetings of the members; * *”
As we understand this provision, members of the corporation could be notified of special meetings in one of two ways: (1) by mail; or (2) in a manner customarily used by union officials in notifying its members of meetings. The record contains a stipulation by the parties that the union referred to, Aluminum Workers Local 225, follow the practice of posting meeting notices on the bulletin board at the Kaiser plant.
Tanguis used neither method. He did not cause notices to be mailed and he could not, and did not, post a notice on the bulletin board at the Kaiser plant, the customary manner, because Local 225 was no longer the certified collective bargaining agent of the workers. As no other method of giving the required notice has been called to our attention in the union constitution, rules or regulations, we conclude no business binding on the 225 Building Corporation was conducted on August 15 because the form of notice used to call the meeting contravened the corporation’s bylaws.
We note that, even had the meeting been properly called, the vote taken was insufficient to amend the corporate charter. It will be recalled that 895 members voted in favor of the proposed amendment and there were 2,084 members in good standing when the election was held. Under Article X of the Charter of the 225 Building Corporation, the charter could be amended only by a two-thirds vote of the members of the corporation in good standing. That article provides:
“This charter may be amended or modified by a two-thirds (2/z) vote of the members of the corporation in good standing voting at any regular or special meeting, provided that the said proposed amendment, change or modification has been read at one (1) meeting held within sixty (60) days prior to the meeting at which the said proposed amendment, change or modification is voted upon.”
Appellants argue the two-thirds requirement applies to membership present at the meeting and does not mean that two-thirds of the total membership must vote affirmatively to amend the charter. They point out that a quorum under the corporation’s bylaws is fifteen members and if a quorum is present any business may be conducted. *430 We do not agree with this interpretation of the quoted article. It is significant to note the provision of Article IX of the same charter in this connection. It reads:
“The Board of Directors shall have the power to make, amend and repeal ByLaws to govern this corporation provided they are in accordance with and do not conflict with these Articles and subject always to the power of a majority of the members of the corporation present and voting to change or overrule any action taken in this connection by the Board of Directors, at a meeting called and held in accordance with law, these Articles, or the By-Laws.”
Because Article IX gives members “present and voting” the right to modify actions of the directors concerning making, amending or repealing bylaws, we believe that, if the drafters of the charter intended to give two-thirds of the membership “present and voting” the right to amend the charter, the Article would have so stated. Certainly changing the charter is a much more serious matter than changing the bylaws and it is highly unlikely the intention of Article X is to permit a change in the charter by two-thirds of a quorum of fifteen, or only ten members out of a membership which exceeds 2000.
Thus we further conclude that even had the election meeting been called in conformity with the charter and bylaws of the 225 Building Corporation, nonetheless the vote was insufficient to effect the proposed changes.
We must next consider whether the documents entitled “Ratification of Members Action”, signed by 1543 members in good standing, cured the irregularities in adopting the charter amendments and made valid the amendments purportedly adopted. The ratification reads as follows:
“A special meeting was called and held on August 9, 1968, at 4:00 P.M. for the purpose of reading amendments to the Articles of Incorporation of Aluminum Workers Local 225 Building Corporation. The purpose of said amendments was to put the Union Hall in the hands of Kaiser Union employees.
A special meeting was called and held on August 15, 1968, at 1:00 P.M., at which the amendments read at the above captioned meeting were voted on. Said vote was 895 for the amendments and 30 against.
A special meeting was called and held on August 30, 1968, at which meeting, nominations for the officers of the Board of Directors of Kaiser Union Building Incorporated were accepted.
A special meeting was called and held on September 5, 1968, at which nominations made at the special meeting of August 30, 1968, were voted upon. The following members of the Board of Directors have been elected: Claude Busby, Lester Tanguis, Jack Robinson, Earl Gonzales, and Sam Broyard.
We, the undersigned members of Aluminum Workers Local 225 in good standing do authorize and give our consent to the action taken at the above captioned meetings.”
Appellants argue the ratification had the effect of approving the amendments to the charter and this method is sanctioned by the 225 Building Corporation bylaws, Article IV, Section 7, which provides:
“Action without meeting. Any action which is prohibited to be taken without a meeting of members either by law, the Articles of Incorporation, or the ByLaws of the corporation, may be taken without a meeting if authorized or consented to before, at or after the action, in writing, signed by two-thirds (2/z) of the members of the corporation that would be entitled to vote and would be or would have been entitled to vote at a meeting duly held for such purposes and filed by the corporation by filing with its Secretary.”
A reading of the ratification document discloses the proposed amendments *431 to the charter are not explained. The testimony of many of the Local 13000 workers who obtained these signatures reflects that not only were the amendments not explained to many of the signatories, but those who passed the documents around did not themselves have the knowledge to explain the nature of the amendments. The document simply states the “ * * * purpose of said amendments was to put the Union Hall in the hands of Kaiser Union employees”. If we assume the charter could be amended without a meeting of the membership being called for that purpose, the document authorizing such action without a meeting clearly would have to explain in greater detail the amendments it purported to make or ratify. Thus we conclude the purported ratifications signed by 75% of the membership could not serve to amend the charter as appellants contend.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.